BETSIE FREEDMAN et al., Appellants, v. WILLIAM OPPENHEIM, Respondent.

REAL PROPERTY — WHEN TITLE BY ADVERSE POSSESSION, ALTHOUGH ESTABLISHED BY PAROL TESTIMONY, IS MARKETABLE.   Title by adverse possession clearly established, although by parol evidence, is a marketable title; and where it appears in an action to compel specific performance of a contract to exchange real estate that the plaintiffs have a record title, perfect except as to two defects, which cannot be considered on this appeal, that they and their predecessors have had possession thereunder for a period of thirty-eight years and that during that entire period no person has made any claim of ownership to the premises, other than those from whom the plaintiffs derived their title, a decree, based upon a conclusion of law, that the plaintiffs have a good and indefeasible title to the premises by adverse possession, is properly granted.

*Freedman* v. *Oppenheim*, 102 App. Div. 622, reversed.

(Submitted December 7, 1906; decided January 8, 1907.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered March 20, 1905, reversing a judgment in favor of plaintiffs entered upon a decision of the court on trial at Special Term and granting a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Hugo Hirsh* and *Frank Rosenberg* for appellants.   The deed was perfectly good between the parties. (L. 1896, ch. 547; *Smith* v. *Boyd*, 101 N. Y. 477; *Enders* v. *Sternberg*, 2 Abb. Ct. App. Dec. 31.)   Plaintiffs' title by adverse possession was absolute. (Code Civ. Pro. §§ 369, 370; *Scholle* v. *City of New York*, 119 N. Y. 613; *Simis* v. *McElroy*, 160 N. Y. 156; *Edwards* v. *Noyes*, 65 N. Y. 126.)

*George Edwin Joseph* for respondent.   It was incumbent in plaintiffs to prove facts which would obviate the risk of further litigations in defense of the title. (*Simis* v. *McElroy*, 160 N. Y. 156; *Heller* v. *Cohen*, 154 N. Y. 299.)

HAIGHT, J.  This action was brought to compel a specific performance of a contract to exchange real estate, bearing date the 11th day of September, 1901.  The defendant refused to accept the plaintiffs' title on the grounds : *First*, that there was outstanding in one Mary Jane Houseman a one-fifth interest in the property, and *second*, that one James M. Cruser, who was the owner of the other four fifths of the premises in question, had never conveyed the same.  Upon .the first trial of this action it appeared that in 1834 one Jacob Houseman was the record owner of the premises in question, and that he died intestate, leaving five children, four of whom conveyed their interest in 1844 to Morris H. Cruser, but no conveyance was found from his daughter Mary Jane House= man.  There was, however, evidence from one Susan L. Houseman, a niece of Mary Jane Houseman, to the effect that Mary Jane died at the age of twelve years and was buried in the Staten Island cemetery which belonged to the church on the terrace, and that she had often seen the tombstone marking her grave ; that it remained until four or five years ago when the graveyard was removed to another place ; that the source of her knowledge was the statement of her father and mother and the family talk which she had often heard.  If she died after her father and at the age of twelve years, she must have died intestate, unmarried and without issue, thus leaving her four remaining brothers her only heirs at law, whose title passed under their convey- ance in 1844.  As to the second objection made, to the effect that James M. Cruser never conveyed the title vested in him, it appears that he resided in Gloucester, Virginia, and that on the second day of June, 1845, a power of attorney purporting to have been executed by him, in which he appointed Edwin R. L'Amoureux his attorney in fact to convey the premises. This power of attorney was acknowledged before Edward E. McLane, a notary public in the city of Norfolk, Virginia, who certified that on the second day of June in the year 1845, "personally appeared before me the within named James Monroe Cruser, to me known and acknowledged the above

letter of attorney to be his act and deed." It is now contended that this power of attorney is void, for the reason that the notary did not certify that he knew the person who appeared before him to be the person described in the power of attorney. It is also claimed that there is a defect in the certificate executed by the clerk of the Hustings Court of the city of Norfolk, who, instead of certifying in accordance with the statute that he was acquainted with the handwriting of the notary, only certified that he was duly commissioned and qualified, and that full faith and credit were due to all his acts as such. L'Amoureux as attorney in fact did convey the premises, but for the defects referred to the Appellate Division reversed the judgment and ordered a new trial. (80 App. Div. 487.) Upon the new trial the court found as facts: "That one Isaac F. Tysen on or about the 3rd day of April, 1866, purchased the aforesaid premises in Richmond County, and contracted to be conveyed by the plaintiffs to the defendant herein, from Maria A. Nesmith and Thomas Nesmith, her husband, and received a warranty deed of said premises conveying to him the fee thereof; that said deed was on the 4th day of May, 1866, duly recorded in the office of the Clerk of Richmond County, in Liber 65 of Deeds, page 156. That at the time of the conveyance of said premises to said Isaac F. Tysen, the same were, and ever since have been protected by a substantial inclosure, repairs to which, from time to time, were made by said Isaac F. Tysen. That immediately after the receipt of said deed the said Isaac F. Tysen entered upon and into possession of said premises under claim of title and exclusive of any other right, founding his claim under said written deed as being a conveyance of the said premises, and that from time to time he has improved said premises. That said Isaac F. Tysen held possession of said premises under said deed until 1888, in which year he died intestate, and said premises descended to his only son and heir at law Robert F. Tysen, who went into possession of said premises under said deed and exclusive of any other right, and who con-

veyed said property to the plaintiff on August 29th, 1901, by a deed which was recorded in the Richmond County Clerk's office on September 12th, 1901, in Liber 286 of Deeds, at page 466. That immediately upon receipt of said deed the plaintiffs entered upon and into possession of said premises under the said deed and exclusive of any other right; that no claim of ownership of said premises other than by said Isaac ·F. Tysen, Robert F. Tysen and the plaintiffs has been made since the year 1866," and, as conclusions of law, that the plaintiffs have a good and indefeasible title to the aforesaid premises by adverse possession. Again, judgment was entered for the plaintiffs and again the Appellate Division has reversed. It does not appear in the order that the reversal was upon the facts, and we must, therefore, presume that the reversal was upon the law. (Code of Civil Procedure, section 1338.) The findings of fact are supported by the evidence. Indeed, they are substantially copied from the undisputed testimony of the witnesses.

Inasmuch as the trial court has not based its conclusions of law upon the record title shown by the plaintiffs, the alleged defects upon which the former reversal was based may not now be raised. Had they been raised by appropriate findings we should hesitate about condemning the record title, for the evidence with reference to the death of Mary Jane Houseman at the age of twelve years was sufficient to authorize a finding of fact to that effect, and as to the power of attorney to L'Amoreux and the deed executed by him which were made in 1845, nearly sixty years before the trial of this action, the court might have found, under the circumstances, that they were ancient documents entitled to be admitted in evidence, notwithstanding the alleged defects in the acknowledgment and certificate referred to. Indeed, it has been held repeatedly that a deed appearing to be of the age of thirty years may be given in evidence without proof of execution if such account of it be given as may, under the circumstances, afford the presumption that it is genuine. (*Enders* v. *Sternbergh*, 2 Abb. Ct. App. Dec. 31–36; 3 Johns. Cas. 283; *Hewlett* v. *Cock*,

7 Wend. 371; *Martin* v. *Rector*, 24 Hun, 27, 28; *Ensign* v. *McKinney*, 30 Hun, 249–253; *Troup* v. *Hurlbut*, 10 Barb. 354; *Hoopes* v. *Auburn Water Works Co.*, 37 Hun, 568–571; affirmed, 109 N. Y. 635; *McKinnon* v. *Bliss*, 21 N. Y. 206–211.) But in the absence of such findings the judgment must stand or fall upon the finding that the plaintiffs have title by adverse possession.

Upon the question of adverse possession it will be found, upon comparing the findings with the requirements of the Code of Civil Procedure (sections 369–370) that the plaintiffs' claim of title under a written instrument for upwards of twenty years, in every respect conforms to the requirements of the Code. It is contended, however, that the defendant ought not to be compelled to accept a title which is dependent upon parol testimony, and our attention is called to the case of *Sims* v. *McElroy* (160 N. Y. 156). It is true that in that case there was a comment from the judge writing the opinion, to the effect that a party ought not to be compelled to take title to premises where he has got to defend his title by parol evidence, but in no place in the opinion does it appear that title by adverse possession clearly established does not in some instances furnish a marketable title. This question was fully considered in the case of *Heller* v. *Cohen* (154 N. Y. 299–311). In that case MARTIN, J., in delivering the opinion of the court stated : " There are cases where title by adverse possession may, and will, be upheld. If there is no disputed question of fact, and the possession has been clearly adverse and undisturbed for the required period, the title may be sustained. * * * To establish title by adverse possession, it must be shown that the person holding the possession did so in open hostility to the rights of the true owner." It is quite true, as the learned judge remarked in connection therewith, that titles by adverse possession are not looked upon with favor by persons contemplating the purchase of property; but he concedes that there are cases in which the title will be sustained, and the question here is as to whether the adverse possession in this case is such as to make the title of the plaintiffs

marketable.    Here we have a record title in the plaintiffs perfect, except as to the two defects, to which attention has been called.    We have possession shown thereunder, by uncontradicted testimony, since April 3rd, 1866, a period of thirty-eight years at the time of the trial of this action, and in addition to that we have the further finding that during that entire period no person has made any claim of ownership to the premises whatever, other than those from whom the plaintiffs have derived their title.    Our conclusions, therefore, are that the findings sustained the conclusions of law and that in this case the title of the plaintiffs was marketable.

The order of the Appellate Division should be reversed and the judgment of the trial court affirmed, with costs in all courts.

CULLEN, Ch. J., O'BRIEN, EDWARD T. BARTLETT, VANN and CHASE, JJ., concur; WILLARD BARTLETT, J., not sitting.

Ordered accordingly.