(63 Misc. Rep. 82.)

### HOLMES v. SEABOARD PORTLAND CEMENT CO. et al.

(Supreme Court, Special Term, New York County. April 28, 1909.)

1. PLEADING (§ 198*)—DEMURRER—JOINT DEMURRER.

A joint demurrer by two or more defendants to a complaint must be overruled, if the complaint states a cause of action against any one of the parties jointly demurring, under the rule that a demurrer must be sustained or fail to the whole extent to which it is applied.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 461–463; Dec. Dig. § 198.*]

2. TRUSTS (§ 371*)—FRAUD OF TRUSTEES—PLEADING.

A complaint alleged that defendant H. held the stock of certain corporations as trustee to secure plaintiff the payment of $140,000 under a contract for the sale of plaintiff's interest in an engineering company to a finance company; that the engineering company had contracted to erect a plant for a cement company, and was to have complete control of marketing the cement company's securities; that H., as trustee, through the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

engineering company, controlled the cement company and was entitled to receive additional cement stock, to hold at all times a majority thereof. The contract also provided that, until default by the finance company in paying the amount stated to plaintiff, H., as trustee, should vote his holdings in the stock of both companies as directed by defendant B.; that B., with the knowledge and consent of H., as trustee, caused the cancellation of the contract and the loss to the engineering company of valuable rights; and that the finance company had failed to pay installments on the price plaintiff was to receive, maturing after June 15, 1908. *Held*, that a provision that until default H. should follow the instructions of B. should be construed as qualified by H.'s obligation not to permit any act that would destroy or impair plaintiff's prospect of obtaining the price secured by the trust, and that the complaint therefore stated a cause of action against both B. and H.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 588; Dec. Dig. § 371.*]

Action by John T. Holmes against the Seaboard Portland Cement Company and others. On joint demurrer of several defendants to the complaint for want of facts and that causes of action have been improperly united. Overruled.

Duer, Strong & Whitehead (George A. Strong, of counsel), for plaintiff.

Hardy & Shellabarger (Charles J. Hardy, of counsel), for defendants.

GIEGERICH, J. All the defendants in this action, with the exception of Benjamin S. Catchings, have demurred jointly to the plaintiff's complaint, upon the ground that it does not state a cause of action, and also upon the ground that various causes of action have been improperly united.

The complaint alleges that on or about April 22, 1908, the plaintiff and defendant Beaton, each being interested in the General Finance Company (hereinafter called the "Finance Company"), the Cement Engineering & Construction Company (hereinafter called the "Engineering Company"), and the Seaboard Portland Cement Company (hereinafter called the "Seaboard Company"), entered into an agreement with the Finance Company and the Engineering Company and the defendants Hardy and Catchings, as trustees. According to the terms of this agreement, which forms the basis of plaintiff's alleged cause of action, the plaintiff, Holmes, was to sell his entire interest in the Engineering Company to the Finance Company for the sum of $140,000, payable in various installments. The plaintiff and the defendant Beaton agreed to transfer their entire holdings in the stock of the Engineering Company to the Finance Company, and to procure the transfer to it of all the capital stock of the Engineering Company, owned by one Shellabarger, and also to transfer to the defendant Hardy, as trustee, all of the Engineering Company's holdings of the Finance Company's capital stock, to wit, the entire capital of the Finance Company; that thereupon the Finance Company agreed to assign to the defendant Hardy, as trustee, all of the stock of the Engineering Company transferred to it as before set forth, which stock, together with the resignations of

certain officials of the two companies, Hardy was to hold in trust for the purpose of securing to the plaintiff the payment of the $140,000 by the Finance Company. The agreement further specifically provided the manner in which Hardy was to hold and use said stock.

The complaint further alleged that it was also provided that if there should be any default in payment of any of the installments by the Finance Company on or after June 15, 1908, and such default should continue for 15 days, then Hardy, upon the demand of plaintiff, should transfer and deliver the stock and resignations which he held as trustee to the defendant Catchings, who should hold and dispose of the same as trustee in the manner specifically provided for in the agreement. The complaint further alleged that the Engineering Company agreed to deposit with the defendant Hardy, as trustee, so much of the stock of the Seaboard Company as should result to it, net, from the handling of the securities of said Seaboard Company, pursuant to the terms of a certain agreement between the Seaboard Company and the Engineering Company. This agreement, a copy of which is annexed to the complaint and marked "Schedule B," provides in brief that the Engineering Company was to erect for the Seaboard Company a complete plant for the manufacture of cement, and was also to have complete control of the marketing of the securities of the Seaboard Company, and, for its services in erecting this plant and marketing the securities, was to receive a certain amount of the stock and bonds of the Seaboard Company. The Engineering Company was to deposit such stock with Hardy from time to time, and in such amounts as should be reasonably possible, taking into consideration the necessity to the Engineering Company of handling and disposing of the Seaboard Company's bonds and other securities.

The complaint further alleges that at the time of the agreement of April 22d the Engineering Company had obtained, under its contract with the Seaboard Company, and held a majority of outstanding stock of the Seaboard Company, and was entitled to receive sufficient additional stock from the Seaboard Company to hold and maintain at all times a majority of the issued stock of the Seaboard Company and to meet the Engineering Company's reasonable necessities in its sale or other disposition of the Seaboard Company's bonds or other securities. The complaint further sets forth the performance of certain portions of the agreement of April 22d, namely, the transfer by Holmes, Beaton, and Shellabarger of all of the capital stock of the Engineering Company to the Finance Company and the retransfer of it by the Finance Company to the defendant Hardy, as trustee, and the transfer by Hardy, as trustee, of all said holdings of stock in the Engineering and Finance Companies to himself, as trustee, upon the books of said companies. It further alleges the payment by the Finance Company of the various installments to be paid by it under said agreement up to and including the installment due June 15, 1908. Next the plaintiff alleges the various ways in which the defendants have violated this agreement, and various things done by said defendants in order to defeat and evade it. He alleges that the defendant the Finance Company has neglected to pay any installment of the sum of $140,000, since that

of June 15, 1908; that the defendant the Engineering Company has failed and neglected to transfer to the defendant Hardy, as trustee, the stock of the Seaboard Company resulting to it from the handling of Seaboard Company securities, pursuant to the terms of said agreement, and that Hardy, as trustee, has failed and neglected to obtain said stock by enforcing said agreement.

It is further alleged that upon the acceptance of the resignations given to the defendant Hardy, as trustee, pursuant to the agreement of April 22d, directors of the Engineering Company were selected, all of whom were under the control of the defendant Beaton; that subsequent to the said agreement of April 22d the defendant Beaton caused to be formed the defendant the Eastern Securities & Finance Company (hereinafter called the "Eastern Company") for the accomplishment of the purposes hereinafter set forth, and at all times he controlled the action of said corporation through the direct or indirect ownership of a majority of its stock; that through the exercise of the control of the Engineering Company over the Seaboard Company the defendant Beaton had himself elected president of the Seaboard Company, and thereafter, for the purpose of defeating the true intent and purpose of said agreement of April 22d, defendant Beaton, with the knowledge, connivance, and consent of the defendant Hardy, caused to be canceled the contract between the Engineering and Seaboard Companies, before referred to and marked "Schedule B," and caused to be executed a contract between the Seaboard Company and the Eastern Company whereby the latter got the rights and benefits the Engineering Company had under the former contract, Schedule B, and the said Eastern Company took and has since held the same with full knowledge of the agreement of April 22d, and of plaintiff's rights thereunder, and also of the reason why the transfer was made to it—that is, the Eastern Company; that the defendant Beaton, through his control over said Hardy, as trustee, Eastern Company, Seaboard Company, Engineering Company, and Finance Company, caused some or all of the assets of the Engineering and Finance Companies which should have been administered pursuant to said agreement of April 22d, and for the purposes thereof, by defendant Hardy, as trustee, to be transferred to the Eastern Company or Seaboard Company, or both, and caused the Engineering Company to be stripped and deprived of its assets, for the purpose of avoiding the obligation of said agreement and depriving plaintiff of his rights and benefits under said agreement; that all of said actions were done by said Beaton, with the knowledge and connivance of defendant Hardy, as trustee, as part of a wrongful and illegal conspiracy to avoid and defeat the said agreement of April 22d and fraudulently to deprive plaintiff of his rights thereunder.

The complaint further alleges that at the time of the execution of the agreement of April 22d the value of the capital stock of the Engineering Company, which was to be held by the defendant Hardy in trust, consisted largely of its rights under the contract, Schedule B, with the Seaboard Company, and at that time or shortly thereafter there had been actually delivered to the Engineering Company a large part of the

stocks and bonds due it under said contract. The complaint, in conclusion, alleges due performance on the part of the plaintiff.

The relief demanded in the complaint is that the contract between the Eastern Company and the Seaboard Company be adjudged fraudulent and void as to him, and that the contract between the Engineering Company and Seaboard Company (Schedule B) be reinstated; that the defendants be adjudged to account to plaintiff and to the defendant Catchings, as trustee, for all the securities and assets of the Seaboard Company, Engineering Company, and Finance Company, which came into the possession or control of either of them, and for any profit or advantage accruing to them by reason thereof, and for all their acts in connection therewith; and plaintiff further demands judgment that this court decree a specific performance of said agreement of April 22d on the part of the defendants; that the defendants, other than Catchings, as trustee, be each of them enjoined and restrained from further disposing of any of said assets or securities, except in the manner as provided in said agreement, and that a receiver be appointed for the Engineering Company and the Finance Company.

In regard to the first ground of demurrer, namely, that the complaint does not state a good cause of action, it is unnecessary to examine it to see if it states a cause of action against every one of the defendants, for the reason that the defendants here have demurred jointly, and under the well-established rule that where two or more defendants unite in demurring to a complaint, such demurrer is joint, and, since a demurrer must be sustained or fail to the whole extent to which it is applied, it must be overruled if the complaint states a good cause of action against any one of the parties jointly demurring. 6 Enc. Plead. & Prac. 321; see, also, Mildenberg v. James, 31 Misc. Rep. 607, 609, 66 N. Y. Supp. 77, affirmed without opinion in 62 App. Div. 617, 71 N. Y. Supp. 1142, and 175 N. Y. 494, 67 N. E. 1085; Moore v. Charles E. Monell Co., 27 Misc. Rep. 235, 58 N. Y. Supp. 430; Fish v. Hose, 59 How. Prac. 238; People v. New York, 28 Barb. 240, 251.

As to the defendants Beaton and Hardy, as trustees, I am of the opinion that the complaint states a cause of action. The defendant Hardy held the stock in question as trustee primarily for the purpose of securing to Holmes the payment of $140,000 provided in the contract; and he also held, as such trustee, all the stock both of the Finance Company and of the Engineering Company. He also held the resignations of all the officers of both these companies. This gave him absolute control of both corporations at any time he saw fit to exercise it. He could have called a meeting of stockholders of each, and elected other officers in the place of those whose resignations he held. This put in his hands the power at any time to check any acts contemplated on the part of the then officers of either company in contravention of the spirit of the agreement, or, if such acts were performed without his knowledge, to thereafter elect other officers and repudiate such acts. It should also be borne in mind that through the Engineering Company Hardy, as trustee, also controlled, or was in a position at any time to control, the Seaboard Company.

It is alleged in the complaint that at the time of the agreement the Engineering Company held a majority of the outstanding stock of the Seaboard Company, and was entitled to receive sufficient additional stock to hold at all times a majority of such outstanding stock. Such, stated briefly, were the powers which Hardy possessed, and which by the terms of the agreement he was to exercise for the purpose of securing to the plaintiff the payment by the Finance Company of the $140,-000 in question. It is true that there is a further provision in the agreement that, until default by the Finance Company on any of the installment payments to be made to the plaintiff, he, as trustee, should vote his holdings in the stock of both companies as he should be directed to do by the defendant Beaton; but this provision that he should follow the instructions of Beaton must plainly be taken as qualified by his primary obligation to the plaintiff, and cannot be construed as meaning that he was under obligation, or even at liberty, to follow the directions of Beaton to the extent of doing or permitting any act which would clearly have the effect of destroying or impairing the plaintiff's prospect of obtaining the $140,000 in question.

Stripped of the meshwork of corporate organizations which involves and surrounds the transaction, the central fact stands out that two individuals, the plaintiff and Beaton, were jointly interested in the single undertaking involved, namely, the erection of a cement manufacturing plant to be held in the ownership of the Seaboard Company, and that the purpose of the contract under consideration was to separate their interests with the final aim that the plaintiff should receive $140,000, and that Beaton should receive the plaintiff's interest in the enterprise; that is to say, his interest in the various corporations by which the enterprise was being carried through. For the purpose of securing payment of this $140,000 to the plaintiff, the defendant Hardy was made trustee and placed in a position where he could control all three of the corporations. The value of the stock of the Engineering Company, and consequently the chance which the plaintiff had of obtaining the $140,000 in question, depended largely upon the rights which the Engineering Company had under its contract with the Seaboard Company. Under such circumstances, I am of the opinion that the allegation that the defendant Beaton, in the manner set forth in the complaint, and with the knowledge, connivance, and consent of the defendant Hardy, as trustee, caused the cancellation of such contract and the loss to the Engineering Company of such valuable rights, constitutes a cause of action against the two defendants named; and, as the demurrer is joint, upon the principle above set forth, it must be overruled.

Demurrer overruled, with leave to the defendants to answer, upon payment of costs, within 20 days after service of the interlocutory judgment.